UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY MAYCUMBER,<br><br>                                   Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br>Social Security Administration,<br><br>                                  Defendant. | Case No.:  25-cv-00793-WQH-DEB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security. (ECF No. 12.)[1]

## I.    BACKGROUND

Plaintiff Gary Maycumber ("Gary M.") suffers from cervical degenerative disc disease, status-post fusion with cervical fusion syndrome, carpal tunnel conditions, osteoarthritis, and migraine headaches. (ECF No. 6-2 at 24; *see also* ECF No. 12 at 2.)

---

[1] Frank Bisignano is the Commissioner of Social Security and is automatically substituted as Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

On August 16, 2021, Gary M. filed a claim under Title II of the Social Security Act for Social Security Disability Insurance ("SSDI") benefits and claimed a disability onset date of October 13, 2014. (Compl., ECF No. 1 ¶ 8.)

On January 19, 2022, Gary M.'s application for disability benefits was initially denied by the Social Security Administration. (ECF No. 6-2 at 18.) On December 22, 2022, Gary M.'s application was denied upon reconsideration. *Id.*

On January 3, 2023, Gary M. requested a hearing before an Administrative Law Judge ("ALJ"). *Id.*

On June 15, 2023, Administrative Law Judge Robert Iafe (the "ALJ") held a telephonic hearing on the matter. *Id.* at 34–65.

On April 3, 2024, the ALJ denied Gary M.'s claim for SSDI benefits in a written opinion ("the Decision"). *Id.* at 18–29. The ALJ concluded that Gary M. "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2021, the last date insured." *Id.* at 29.

Gary M. filed an appeal with the Social Security Administration Appeals Council. On January 27, 2025, the Social Security Administration sent Gary M. a letter informing him that his request for review had been denied and that the ALJ's decision was the final decision of the Commissioner of Social Security (the "Commissioner"). *Id.* at 2.

On April 2, 2026, Gary M. initiated this action by filing a Complaint seeking review of the Commissioner's decision under 42 U.S.C. § 405(g). (*See* Compl.)

## II.   SUMMARY OF THE ALJ'S DECISION

### A.   The Five-Step Evaluation Process

The Social Security regulations establish a five-step process for determining whether a claimant is disabled under the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

First, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is currently engaged in substantial

gainful activity, their claim is denied. *Id.* at (a)(4)(i). If not, the evaluation process continues.

Second, the ALJ determines whether the claimant has a "severe" impairment within the meaning of 20 C.F.R. § 404.1520(c). If the claimant does *not* have an impairment or combination of impairments that is "severe," their claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the claimant does have a "severe" impairment, the evaluation process continues.

Third, the ALJ determines whether the severity of the claimant's impairment meets or exceeds an impairment identified in 20 C.F.R. § 404, subpart P, Appendix 1. If the claimant's impairment satisfies that criteria and an additional durational requirement, the claimant is determined to be disabled and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the evaluation process continues.

Fourth, the ALJ determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). The ALJ then determines whether the claimant's RFC is adequate to perform relevant previous work activities. 20 C.F.R. § 404.1520(f). If the claimant has sufficient RFC to perform those activities, their claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the evaluation process continues.

Fifth, the ALJ determines whether other work exists in "significant numbers in the national economy" that the claimant can perform based on their RFC, capacity, age, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). At this step, a limited burden of production shifts to the Social Security Administration to establish that the claimant can perform this other work. "The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations supported by the record or (2) by

reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2." *Angela H. v. Bisignano*, No. 24-CV-2223-WQH-MMP, 2026 WL 253521, at *2 (S.D. Cal. Jan. 31, 2026).

### B.   Summary of the ALJ's Decision

Here, the ALJ stated in his Decision that, "[a]fter careful consideration of all the evidence . . . the claimant was not under a disability within the meaning of the Social Security Act from October 13, 2014"—the alleged beginning of Gary M.'s disability—"through the date last insured" of December 21, 2021 (the "Disability Period"). (ECF No. 6-2 at 18–19.)

At the first step of the analysis, the ALJ determined that Gary M. "did not engage in substantial gainful activity" during the Disability Period. *Id.* at 20. The ALJ stated: "The claimant's earnings records indicate earnings of $15,418 in 2015 and $8,739 in 2016, which are attributable to private disability payments, and not substantial gainful activity." *Id.* The ALJ proceeded to the next step of the evaluation process.

At the second step, the ALJ determined that Gary M. "had the following severe impairments: degenerative disc disease of the cervical spine, status post fusion surgery, with cervical fusion syndrome; carpal tunnel syndrome status-post release surgeries; osteoarthritis of the bilateral knee; and migraine headache." *Id.* (citing 20 C.F.R. § 404.1520(c)). The ALJ determined that the "claimant's obesity is a non-severe impairment" because it did not impose any "additional limitations to the claimant's residual functional capacity." *Id.* at 21. The ALJ determined that the "claimant's medically determinable mental impairment of depression" was also non-severe. *Id.* at 21–22. The ALJ proceeded to the next step of the evaluation process.

At the third step, the ALJ determined that Gary M. did not have an impairment or combination of impairments that "met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 22. (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ stated that "no treating or examining physician has reported findings, which either meet or are equivalent in severity to the

criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record." *Id.* The ALJ proceeded to the next step of the evaluation process.

At the fourth step, the ALJ determined that Gary M. "had the residual functional capacity to perform a range of light work," including the ability to: lift and carry 20 pounds occasionally and 10 pounds frequently," and "stand and/or walk for 6 hours out of 8 hours and sit for 6 hours out of 8 hours." *Id.* at 22–23.

In reaching this RFC determination, the ALJ followed a two-step process: (1) determining whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and (2) evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." *Id.* at 23.

The ALJ described Gary M.'s subjective reports of his symptoms, including "chronic pain, sleepless nights, and inability to function due to pain." *Id.* "In [Gary M.'s] adult function report, he reported difficulty with lift, walk, sit, stand, and postural abilities" and "reported he cannot spend more than 1–2 hours doing anything other than reading and watching television." *Id.*

The ALJ then wrote that Gary M.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23–24.

The ALJ described the medical interventions Gary M. received during the period from May 25, 2018, through March 13, 2023, including: "injections for his bilateral knees," "anterior cervical diskectomy surgery," and a "cervical epidural steroid injection." *Id.* at 24–25. The ALJ wrote that "claimant's statements about the intensity, persistence, and limiting effects of his symptoms" are "inconsistent because the objective medical evidence generally does not support the alleged loss of function." *Id.* at 25.

The ALJ continued:

> Although the claimant reports about his pain complaints, the record indicates satisfactory results of pain control with his medication. He testified that pain medication helps and it helps him sleep. He testified that he volunteers with church where he will go with a group of people and drop off a package to people and welcome them to church. Also, during the year before the date last insured, he was actually "working in his yard recently and strained his back lifting rocks." The [ALJ] has considered the claimant's reports of symptoms and finds the above reduced light exertional level accounts for the claimant's conditions.
>
> As for medical opinion(s) and prior administrative medical finding(s), the [ALJ] cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The [ALJ] has fully considered the medical opinions and prior administrative medical findings as follows.

*Id.* at 25 (citations omitted).

The ALJ discussed the following medical assessments and prior administrative medical findings regarding Gary M.'s impairments: an assessment by the "DDS state agency medical consultants"; an "orthopedic examination" conducted by Dr. Tran; and two assessments by Richard Carpenter, the "claimant's nurse practitioner." *Id.* at 25–26. The ALJ found the "reconsideration level" DDS consultants' assessment to be the most reliable medical opinion because the "DDS medical consultants had the opportunity to review the medical evidence," whereas the other medical professionals based their opinions on "one visit" or did not "have an opportunity to view the entire record." *Id.* at 25–26; *see* ECF No. 6-3 at 31–34.

The ALJ also considered a "third party adult function report from the claimant's spouse" reporting "chronic pain" in Gary M.'s "neck, arms, wrists, hands, back, shoulder, and left knee" and stating that "he stays in bed 12–16 hours a day when he is in pain." *Id.* at 23. The ALJ wrote that, "[t]o the extent the [spouse's] statement suggests a more restrictive functional capacity than found herein, it is not supported by or consistent with the record as a whole, including objective signs and findings." *Id.*

The ALJ considered opinions regarding Gary M.'s mental state from "DDS state agency mental consultants" and "Dr. Nicholson, [a] psychiatric consultative examiner." *Id.* at 26. The ALJ wrote that these opinions "assessed non-severe mental conditions, with all mild [paragraph] B criteria," reported that Gary M. "had some medication treatment for depression," and were "consistent with one another." *Id.*

After reaching the RFC determination, the ALJ stated that Gary M. was "was capable of performing [his] past relevant work as an Airline Pilot, as generally performed in the national economy. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 27 (citing 20 C.F.R. § 404.1565). The ALJ relied on the testimony of a "vocational expert," who testified that a hypothetical individual with the claimant's age, education, work experience, and RFC could perform the claimant's past, relevant work as an airline pilot. *Id.* at 27.[2] The ALJ determined that the vocational expert's testimony was consistent with the information in the "Dictionary of Occupational Titles." *Id.*

The ALJ also determined that, "[i]n addition to past relevant work, there were other jobs that existed in significant numbers in the national economy that the claimant also could have performed, considering the claimant's age, education, work experience, and residual functional capacity." *Id.* at 27–28 (citing 20 C.F.R. §§ 404.1569, 404.1569a). The ALJ stated that the testimony of the vocational expert also supported this finding. *Id.*

Accordingly, the ALJ wrote that a "finding of 'not disabled' is [] appropriate" for Gary M. during the Disability Period. *Id.* at 28.

/ / /

/ / /

/ / /

---

[2] The ALJ also wrote that the "vocational expert testified that the hypothetical individual would be able to perform the claimant's past work, as **School Secretary**, as actually performed. . ." (ECF No. 6-2 at 27 (emphasis added).) This appears to be a typographical error in the Decision.

### III.    LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), a federal district court has authority to review the Commissioner's decision to deny SSDI benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The "substantial evidence" standard requires a district court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)) (citation modified). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Biestek*, 587 U.S. at 103) (citation modified). The standard requires "more than a mere scintilla, but less than a preponderance" of evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted).

"Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), as amended). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The district court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The district court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* (citation omitted); see *also Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("Courts can consider only the reasons the ALJ asserts.") (citation modified).

25-cv-00793-WQH-DEB

A reviewing court may reverse the Commissioner's decision based on a lack of substantial evidence or legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the court finds that the ALJ committed error, a court may not reverse the decision if the error is harmless, which requires that it be "clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (citation modified) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## IV.  DISCUSSION

Gary M. raises five contentions in support of his request that this case be remanded to the Social Security Administration for further proceedings: (1) the ALJ failed to analyze his subjective symptom testimony with sufficient specificity; (2) the ALJ improperly used activities of daily living to discredit his subjective symptom testimony; (3) the ALJ "cherry-picked" evidence to discredit Plaintiff's subjective symptom testimony; (4) the ALJ failed to consider the severity of Gary M.'s migraine headaches and insomnia in reaching an RFC determination; and (5) the ALJ improperly dismissed Gary M.'s depression at as non-severe at the second step of the evaluation process. (ECF No. 12 at 9–44.)

### A.  Subjective Symptom Testimony

Gary M. contends that the ALJ erred by failing to properly analyze his subjective symptom testimony under the "specific, clear and convincing" standard required by the Ninth Circuit. (ECF No. 12 at 9–10.) Gary M. contends that the ALJ's Decision "gave an exceptionally brief five sentence[,] omission-ridden summary of [his] subjective symptom testimony that never once referred to [his] testimony [about] specific work-related limitations." *Id.* at 13. Gary M. contends that the ALJ improperly used boilerplate language. *Id.* Gary M. contends that the ALJ failed to identify particular facts that undermine the credibility of his subjective symptom testimony. *Id.* at 14. Gary M. also contends that the ALJ improperly used "activities of daily living to controvert [his] subjective symptom testimony" but failed to explain how delivering "small church

25-cv-00793-WQH-DEB

welcome packages" and "lift[ing] rocks in his back yard" contradict a "specific limitation statement of the claimant." *Id.* at 26.

Defendant responds that the ALJ "provided valid reasons for not fully accepting Plaintiff's testimony." *Id.* at 17. Defendant contends that the ALJ "accurately identified and summarized [Gary M.'s] subjective complaints," including chronic pain, an inability to sleep, difficulty with regular movements, and trouble "do[ing] anything for more than one to two hours other than reading and watching television." *Id.* Defendant contends that the ALJ credited Gary M.'s subjective testimony and only "declined to fully accept" his subjective account because it was inconsistent with "objective diagnostic evidence," clinical findings, record evidence, and "certain daily activities, such as volunteer work, and performing yard work." *Id.* at 18.

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must undertake a two-part analysis. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 994, 1014 (9th Cir. 2014)). The claimant need not demonstrate that their "impairment could reasonably be expected to cause the *severity* of the symptom" alleged, but that "it could reasonably have caused some degree" of the symptoms. *Id.* (quotations omitted) (emphasis added).

Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014–15.) The "clear and convincing" standard requires "an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). At the second step of the analysis, the ALJ must "provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony" to support their determination under the "substantial evidence" standard. *Ferguson*, 95 F.4th at 1199. The

10

ALJ must "specifically identify the testimony from a claimant she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quotation omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, the ALJ determined—at the first stage of the credibility analysis—that Gary M.'s "medically determinable impairments could reasonably be expected to cause" Gary M.'s self-reported symptoms. (ECF No. 6-2 at 23.) At the second stage, the ALJ determined that Gary M.'s statements concerning the "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 24. As a preliminary matter, this statement alone is not sufficient. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (explaining that this exact "introductory remark" is not adequate to satisfy the substantial evidence standard). The Court must consider the specific basis upon which the ALJ determined that Gary M.'s subjective symptom testimony was "inconsistent [with] the objective medical evidence." (ECF No. 6-2 at 25.)

In the Decision, the ALJ identified three specific reasons to discredit Gary M.'s subjective symptom testimony and to favor the "objective medical evidence [that] generally does not support the alleged loss of function": (1) "the record indicate[d] satisfactory results of pain control with [] medication," which "helps [Gary M.] sleep"; (2) Gary M. testified that "he volunteers with church where he will go with a group of people and drop off a package to people and welcome them to church"; and (3) "during the year before the date last insured, [Gary M.] was actually working in his yard recently and strained his back lifting rocks." *Id.* (quotation omitted).

A claimant's testimony about "not being in continual pain" or their "reports of pain [that] had come under control" may be evidence adequate to discredit that claimant's subjective testimony about pain. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). Here, the ALJ cited Exhibits 6F and 7F, without more specific citations to pages in the

25-cv-00793-WQH-DEB

Administrative Record, in support of its determination that the record reflects "satisfactory results of pain control with [] medication." (ECF No. 6-2 at 25.)

Exhibit 6F, the Progress Notes from Relieve Pain Center dated 4/3/2019 through 10/31/2022, describe that Gary M. reports "chronic pain" and "progressive neck pain," which is "improved with rest" and "worse with activity." (ECF No. 6-7 at 122.) As of October 31, 2022, Gary M. was prescribed "[T]ramadol and [G]abapentin by [Dr.] Carpenter." *Id.* One report dated June 13, 2019 from Exhibit 6F states: "The pain has failed to respond adequately to more conservative treatment modalities including physical therapy, time, rest, and medication." (ECF No. 6-7 at 136.)

Exhibit 7F, the Hospital Records and Progress Notes from Sharp Community Medical Group dated 7/19/2018 through 2/17/2023, contains 231 pages of patient records. *See* ECF No. 6-8 at 2–206; ECF No. 6-9 at 1–26. This exhibit includes descriptions of pain medication prescribed to Gary M., *see e.g.*, ECF No. 6-8 at 7 (prescribing 300 mg of Gabapentin to be taken twice per day); *id.* at 37 (reducing the use of Gabapentin to "once per day"), and medical reports with varying levels of pain during visits. *See, e.g.*, *id.* at 41 (minimal pain), 126 ("more neck pain"), 135 ("continu[ing] to have arm pain that is maintained at 5/10 with medication"), 147 ("neck pain is consistent" and activities of daily living "produce moderate to severe pain in both his arms, elbows, wrist and hands"); *see also* ECF No. 6-9 at 29 (reporting that "Gabapentin helps with nerve pain"); *id.* at 174 (reporting that "[n]eck pain probably getting worse" but "Gabapentin taken once in the evening, helps him to rest and sleep"); *id.* at 81 (reporting that Gabapentin "helps [Gary M.] to rest and sleep").

The ALJ's non-specific citations to these voluminous records describing various levels of pain experienced by Gary M. and responses to medication are inadequate to provide specific, clear, and convincing reasons to discredit Gary M.'s subjective testimony about pain. The ALJ fails to support the generalized conclusion that the "record indicates satisfactory results of pain control" with citations to documents in the record that clearly corroborate that finding. (ECF No. 6-2 at 25.) The ALJ's Decision likewise does not

identify and discuss contradictory evidence in the record, including reports from the two documents it does cite, in which Gary M. describes his pain symptoms. The ALJ's Decision therefore does not fulfill its "responsibility to provide a discussion of the evidence" in reaching its credibility determination regarding medication and pain management. *Treichler*, 775 F.3d at 1103 (quotation omitted).

An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" in assessing whether to discredit the claimant's subjective symptom testimony. *Lingenfelter*, 504 F.3d at 1040. Here, the ALJ specifically identified two activities purportedly inconsistent with Gary M.'s reported pain: volunteer church service and his yardwork. (AR at 25.)

During the telephonic hearing on June 15, 2023, the ALJ asked Gary M. whether he had been involved in "any volunteer service" over the previous "couple years." (ECF No. 6-2 at 44.) Gary M. responded that he "volunteer[s] with church through the Evangelism program, and that's been basically going on Wednesday evenings to people's houses and we have on average about three to four visits. And it's really just dropping off a package and welcoming them to the church." *Id.* The ALJ asked whether Gary M. would "spend[] a great amount of time at any one location" during these events. *Id.* Gary M. indicated that he did not. *Id.* In its Decision, the ALJ repeatedly referenced this volunteer activity in the context of Gary M.'s self-described limitations and reports about pain. (ECF No. 6-2 at 22, 23, 25). The ALJ did not, however, describe how this volunteer service contradicts Gary M.'s testimony about his pain and his other physical limitations. *See id.*; *but see* ECF No. 12 at 20 (Defendant contending, in the Joint Motion, that "Plaintiff's ability to volunteer for his church dropping off welcome packages calls into question his claim that he experienced debilitating pain and limitations that confined him to a bed for 12 to 16 hours

13

a day "most of the time").[3] The ALJ's reference to Gary M.'s volunteer service does not clearly explain why the record discredits his subjective symptom testimony.

The ALJ also refers repeatedly to Gary M. "working in his yard" and "lifting rocks." (ECF No. 6-2 at 25–26.) The ALJ cited the notes included in a medical report dated December 16, 2020:

> Gary says that the medication has been effective for maintaining pain control affording the ability to perform [activities of daily living]. He was working in his yard recently and strained his back lifting rocks. He was advised to abstain.

Exhibit 7F, ECF No. 6-8 at 122; *see* ECF No. 12 at 19 (Defendant citing the same report in its response to Gary M.'s contentions). As above, the ALJ did not explain its reasoning in greater detail, including which subjective testimony is contradicted by Gary M.'s yardwork and why the yardwork contradicts that testimony. (ECF No. 6-2 at 25–26.) The ALJ did describe the yardwork in the context of assessments reached by Mr. Carpenter, including that Gary M. is limited to "occasionally lift[ing] and carry[ing] 20 pounds." *Id.* The Court assumes that the ALJ construed the description of Gary M.'s yardwork as contradicting his self-reported physical limitations, especially his statement during the telephonic hearing that he "can't even hold [his] iPhone." (ECF No. 6-2 at 51.)

The ALJ failed to address the potential contradictions between Gary M.'s self-reported pain and his daily life activities (volunteerism and yard work) with sufficient specificity to provide clear and convincing evidence that the subjective testimony should be discredited. In *Smartt v. Kijakazi*, the Ninth Circuit affirmed the Commissioner's denial of benefits based, in part, on "a direct contradiction" in the claimant's testimony "regarding her ability to drive." 53 F.4th at 497. In that case, however, the claimant "testified that she had not driven since her neck surgery in 2015," but reported in a questionnaire that she

---

[3] The Commissioner may not supplement the ALJ's analysis at this stage of the proceedings by adding to or clarifying its analysis. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citations omitted) ("We are constrained to review the reasons the ALJ asserts. It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

25-cv-00793-WQH-DEB

"routinely drove a car" in 2016. *Id.* Here, the contradiction is less clear. The ALJ did not explain why Gary M.'s volunteerism and yardwork specifically contradict his testimony about his pain, his capacity to perform activities of daily living, or periods in which he is bedridden for extended time. Even if Gary M. lifted rocks on at least one occasion in a manner that contradicts his self-described limitations related to carry weight, the ALJ did not provide greater explanation as to why this event contradicts his testimony about his pain and other physical limitations. Without explanation of the contradiction, the ALJ has not discharged its duty to identify specific, clear, and convincing reasons to discredit Gary M.'s testimony. *Connett*, 340 F.3d at 874; *Lambert*, 980 F.3d at 1278 ("The district court's efforts to shore up the ALJ's decision, while understandable, are unavailing.").

Moreover, assuming that the ALJ's Decision relied on the more specific reasoning offered by Defendant in the pending Joint Motion, these two events do not clearly contradict Gary M.'s subjective testimony. During the hearing, Gary M. testified that he occasionally visited neighbors' homes with a group from his church to "drop[] off a package" and did not spend a "great amount of time" at any of his neighbor's homes. (ECF No. 6-2 at 44.) The testimony did not describe the frequency or duration of these visits. The testimony likewise did not make clear whether Gary M. carried packages to his neighbors and, if so, the weight of any such packages. The limited description of this volunteer activity is not clearly inconsistent with any of Gary M.'s self-described symptoms, including the most serious reports that he may be confined to bed for between twelve and sixteen hours when experiencing pain. *Id.* at 23. The same is true of the December 16, 2020 medical notes that reference Gary M. "working in his yard" and "strain[ing] his back lifting rocks." (ECF No. 6-8 at 122.) The record does not include evidence regarding the nature, duration, or level of exertion required by the yardwork. The few details indicate only that Gary M. spent some amount of time in his yard and, upon lifting rocks, suffered a minor injury. No direct contradiction exists between this event and Gary M.'s subjective testimony, and it remains unclear how this incident belies his reports

25-cv-00793-WQH-DEB

about pain and physical limitations. These two events fail to satisfy the standard for discrediting Gary M.'s subjective symptom testimony.

Accordingly, the ALJ's determination that Gary M.'s "statements about the intensity, persistence, and limiting effects of his symptoms [] are inconsistent" with the record does not satisfy the "substantial evidence" standard. ECF No. 6-2 at 25; *Ferguson*, 95 F.4th at 1199.

### B.    Migraine Headaches, Insomnia, and Depression

Gary M. contends that the ALJ failed to "properly account" for his migraine headaches, insomnia, and depression. (ECF No. 12 at 33.) Gary M. contends that the ALJ determined that migraines constituted a severe impairment at the second step of the analysis but, in reaching an RFC determination, improperly concluded that environmental limitations—like avoiding exposure to "extreme cold, to vibration, and to workplace hazards"—were sufficient to account for the migraines. *Id.* at 34; ECF No. 6-2 at 22–23. Gary M. contends, similarly, that the ALJ's RFC determination fails to adequately account for his insomnia symptoms. (ECF No. 12 at 35.) Gary M. contends that the ALJ's failure to adequately include these symptoms in its hypothetical question posed to the vocational expert means that his opinion regarding his ability to perform past work "has no evidentiary value." *Id.* at 34–35.

Defendant contends, in response, that the ALJ considered these symptoms and merely declined to include unwarranted limitations in the RFC analysis. *Id.* at 35–37. Defendant contends that Gary M. "fails to provide evidence of those limitations that are supported by the record and not solely dependent on his inconsistent subjective complaints." *Id.* at 35–36.

A district court may "affirm the ALJ's determination of [an] RFC if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2006) (citations omitted) (affirming an ALJ's determination that "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"). "The ALJ is required to

consider all of the limitations imposed by the claimant's impairments, even those that are not severe." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Here, the ALJ determined that one of Gary M.'s "severe impairment[s]" was "migraine headache[s]" and, in reaching its RFC determination, referred to Gary M.'s "sleepless nights." (ECF No. 6-2 at 20, 22, 25.) The ALJ also noted that, on December 21, 2021, Gary M. "denied having headaches" at the time. *Id.* at 25. The ALJ stated that Gary M. "testified that pain medication helps and it helps him sleep." *Id.*

The ALJ described in greater detail the assessment of "DDS state medical consultants," which the ALJ found "partially persuasive," and the reports of Dr. Tran, Dr. Nicholson, and Richard Carpenter, "the claimant's nurse practitioner." *Id.* at 25–26. The ALJ concluded that the "reduced light exertional level" described in its RFC finding was based on "the claimant's reports of symptoms" and the "medical evidence of record." *Id.*

An "ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ's RFC determination "must take into account the claimant's testimony regarding his capability" and the ALJ must "assess that testimony in conjunction with the medical evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012). An ALJ need not conduct a "function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record" in reaching an RFC determination. *Bayliss*, 427 F.3d at 1217. However, when discrediting a claimant's testimony regarding their symptoms, an ALJ must continue to satisfy the substantial evidence standard described above. *Id.* at 1214 n.1; *Ferguson*, 95 F.4th at 1199.

In its Decision, the ALJ reasoned that Gary M. had testified that "that pain medication helps and it helps him sleep." (ECF No. 6-2 at 25.). The ALJ's discussion of third-party medical assessments failed to identify with specificity the medical evidence and testimony that purportedly discredits Gary M.'s description of his headaches and insomnia symptoms. The ALJ stated: "The undersigned finds the initial level DDS medical consultant partially persuasive, and the reconsideration level DDS medical consultant

17

25-cv-00793-WQH-DEB

persuasive, where these opinions are supported by and consistent with the record including objective evidence of radiographic scans, physical examinations, and medical treatment notes (5F, 6F, 7F/17-18, 10F–12F)." *Id.* at 25–26. The ALJ then referenced Gary M.'s volunteerism and yard work. *Id.* As above, with respect to the ALJ's determinations about Gary M.'s subjective pain symptoms and physical limitations, the limited and conclusory discussion in the ALJ's Decision regarding headaches and insomnia symptoms does not satisfy the standard required to discredit a claimant's subjective symptom testimony.

In the Joint Motion, Defendant identifies medical records in which "Plaintiff denied [experiencing] headaches" and contends that "Plaintiff reported that his use of anti-inflammatories caused his migraines, but that they resolved when he stopped." (ECF No. 12 at 36; *see, e.g.*, ECF No. 6-9 at 15, 46, 186, 444.) Defendant also contends that the "ALJ relied upon Plaintiff's testimony that his pain medication helped him sleep," that the "record does not appear to show that Plaintiff reported having to nap daily," and that the "use of Wellbutrin" improved Gary M.'s insomnia symptoms. (ECF No. 12 at 37; *see* ECF No. 6-10 at 106 (reporting that Gary M. informed a physician that "he simply cannot fall asleep at night" and that, "[d]uring the day[,] he is tired and fatigued but does not nap daily"). Even assuming that these more specific citations to Gary M.'s testimony and medical records would satisfy the substantial evidence standard, the Court's review of the Joint Motion remains limited to the ALJ's Decision and the materials discussed by the ALJ. *See Connett*, 340 F.3d at 874 ("We are constrained to review the reasons the ALJ asserts. It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

Accordingly, the ALJ's RFC determination is not supported by substantial evidence because it fails to adequately consider Gary M.'s testimony regarding his migraine headaches and insomnia.

### C.   Depression

Gary M. contends that the ALJ failed to consider a "wealth of medical evidence" regarding his depression at the second stage of its analysis and erred in determining that

his depression was "non-severe." (ECF No. 12 at 39–40.) Gary M. contends that he has identified "significant probative medical evidence regarding depression," including "active medication over years and periods of talk therapy," that the ALJ omitted from its analysis. *Id.*

Defendant responds that the ALJ adequately reviewed the record, which does not support a finding that Gary M.'s depression was "severe." *Id.* at 40–42. Defendant also contends that, although the ALJ "did not spell out every single time" a depression diagnosis was "mentioned in the records," his analysis adequately considered Gary M's "history of depression" and found that the depression diagnosis was "not significant or probative evidence." *Id.* at 30–31.

In the Decision, the ALJ wrote that Gary M.'s "medically determinable mental impairment of depression did not cause more than minimal limitation in [his] ability to perform basic mental work activities." (ECF No. 6-2 at 21.) The ALJ stated that he considered the "disability regulations for evaluating mental disorders," including four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (describing the "Paragraph B criteria" used to review a claimant's mental impairment). The ALJ found that the "claimant had no limitation" in any of these areas. *Id.* The ALJ continued:

> The record indicates the claimant had some medication treatment for depression, though the record did not indicate continued ongoing mental health treatment (1F/50, 63, 7F/177). The claimant had no history of psychiatric hospitalization (4F).

> On 10/22/21, the claimant underwent a psychiatric consultative examination with Gregory Nicholson, M.D., for disability determination purposes (4F). The claimant reported a history of depression in the past. He felt depressed at times but had not been feeling depressed most of the time. He did not feel anxious recently. He denied any history of suicidality. He denied any history of psychotic symptoms or manic episodes. He currently saw a doctor for psychiatric medication. He operates his own motor vehicle for transportation. He has no difficulty with dressing,

bathing or hygiene. Mental status examination showed a euthymic mood, appropriate affect, and the claimant was not tearful. He was able to perform memory recall task, serial 3s and spell 'world' both forward and backward. Dr. Nicholson assessed unspecified depressive disorder, in remission. He testified that he volunteers with church where he will go with a group of people and drop off a package to people and welcome them to church.

The DDS state agency mental consultants, at both levels, assessed non-severe mental conditions, with all mild B criteria (1A, 4A).

Dr. Nicholson, psychiatric consultative examiner, assessed non-severe unspecified depressive disorder, with no mental functional limitations (4F).

(ECF No. 6-2 at 21–22.) The ALJ concluded: "Because the claimant's medically determinable mental impairment caused no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was nonsevere." *Id.* at 22 (citing 20 C.F.R. § 404.1520a(d)(1)).

An impairment "may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The second stage of the ALJ's analysis, which considers whether an impairment is severe, is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). In reviewing an ALJ's determination at the second stage of its analysis, the reviewing court considers whether "the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment." *Webb*, 433 F.3d at 687.

The ALJ's decision in this case reflects a review of Gary M.'s history of treatment for depression and consideration of the independent reports of multiple medical experts. Based on specific information in the record and considering the regulatory guidance regarding the severity of mental impairments, the ALJ determined that Plaintiff's

20

depression did not qualify as severe. In the "absence of evidence of significant functional limitations" attributable to depression, district courts have affirmed an ALJ's conclusion that the impairment is not severe. *Samantha M. v. Comm'r of Soc. Sec. Admin.*, No. 23CV2182-W (LR), 2025 WL 1171590, at *2 (S.D. Cal. Feb. 18, 2025), *report and recommendation adopted sub nom. Samantha M. v. Dudek*, No. 23-CV-2182 W (LR), 2025 WL 985159 (S.D. Cal. Apr. 2, 2025). Plaintiff's contentions regarding his history of medical treatment for depression over a period of years are not sufficient to establish that his impairment is severe. Accordingly, the ALJ's determination that Gary M.'s depression was "nonsevere" is supported by substantial evidence and was not error. (ECF No. 6-2 at 21.)

### D.    Harmless Error

If an ALJ's error was "inconsequential to the ultimate nondisability determination," then a district court may nonetheless affirm the ALJ's decision. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quotation omitted). The Ninth Circuit notes that its "precedents have been cautious about when harmless error should be found." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Courts should not treat an error as harmless when an ALJ fails to provide adequate reasoning for a reviewing court to determine whether its conclusions were "supported by substantial evidence." *Lambert*, 980 F.3d at 1278.

Here, the ALJ's Decision does not demonstrate through clear and convincing evidence that Gary M.'s subjective testimony should be discredited. The Court cannot affirm the ALJ's decision after concluding that its determination is not supported by substantial evidence. *Id.*; *see Ferguson*, 95 F.4th at 1204 (reversing and remanding with instructions for the ALJ to reconsider the claimant's "headache symptom testimony" after concluding that its RFC assessment was not supported by substantial evidence).

### V.    CONCLUSION

IT IS HEREBY ORDERED that the Joint Motion for Judicial Review of Final Decision of the Commissioner of  Social Security (ECF No. 12) is granted. The

25-cv-00793-WQH-DEB

Commissioner's decision is reversed, and this matter is remanded for further administrative proceedings consistent with this Order.

Dated:  June 3, 2026

Hon. William Q. Hayes
United States District Court

25-cv-00793-WQH-DEB